UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ARNOLD HUNTLEY, SR., <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF CARLIN; POLICE CHIEF WILLIAM BAUER; OFFICER MATTHEW SLOVER; DOE OFFICERS, in their individual capacity; and DOES 1 to 10, inclusive, <br><br> Defendants. | 3:12-cv-00664-LRH-VPC <br><br> ORDER |

Before the Court is Defendants, the City of Carlin ("the City"), Police Chief William Bauer ("Bauer"), and Officer Matthew Slover's ("Slover") (collectively "Defendants") Motion to Dismiss. Doc. #19.[1] Plaintiff Arnold Huntley, Sr. ("Huntley") filed an Opposition (Doc. #22), to which Defendants replied (Doc. #23).

**I.    Facts and Background**

This case arises out of an altercation between Huntley and Slover on September 29, 2011. Huntley's First Amended Complaint ("FAC") alleges that Huntley was at his son's residence to pick up a vacuum he let them borrow. Huntley double parked his pick-up truck in the street in front of the residence for less than 15 minutes to retrieve the vacuum. During that time, the Carlin

---

[1] Refers to the Court's docket number.

1  Police Department received a call from an individual complaining that Huntley's truck had been
2  parked in the roadway for over an hour.  Slover was then dispatched to the scene.  Upon exiting the
3  residence, Huntley was approached by Slover and the encounter which forms the basis for
4  Huntley's FAC ensued.[2]  According to the FAC, Slover grabbed Huntley by the arm and pushed
5  him against the truck.  Slover then bent Huntley's arm over his head and proceeded to handcuff
6  him.  Huntley claims that he experienced significant pain in his right shoulder after Slover bent his
7  arm over his head and that he sustained serious physical injuries, including but not limited to a right
8  shoulder rotator cuff and labral tear and bicep tendon tear, all of which required surgical
9  intervention.  Ultimately, Huntley was not charged with any crimes and he was released from
10 custody shortly thereafter.

11       Defendants assert that, in order to support his claim for damages, Huntley falsely claimed
12 that his shoulder was injured during the handcuffing incident.  Defendants filed the present Motion
13 to Dismiss seeking dismissal of this action as a sanction for Huntley's perjured testimony and
14 discovery responses falsely denying the existence of preexisting medical conditions, which forms
15 the basis for his claim for damages.  Through his false and deceptive discovery response,
16 Defendants urge that Huntley sought to prevent them from obtaining records and information
17 which he knew would effectively destroy his claim.

18 **II.    Legal Standard**

19       There are two sources of authority under which a district court can sanction a party who has
20 provided falsified testimony: (1) the inherent power of federal courts to levy sanctions in response
21 to abusive litigation practices; and (2) the availability of sanctions under Rule 37 where there has
22 been flagrant, bad faith disregard of discovery duties.  Here, the Court finds that the sanction of
23 dismissal is warranted pursuant to the Court's inherent power.  As such, the Court does not reach
24 the issue of whether sanctions are appropriate under Rule 37.

---

[2] The parties dispute the precise sequence of events that transpired.

2

In *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 349 (9th Cir. 1995), the Ninth Circuit expressly approved of the sanction of dismissal where the plaintiff provided false evidence.  The Court found that "[i]t is well settled that dismissal is warranted where . . . a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'"  *Id.* at 348 (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (upholding dismissal of complaint pursuant to court's inherent power where plaintiff's denials of material fact were knowingly false and plaintiff willfully failed to comply with discovery orders)); *see also Combs v. Rockwell Int'l Corp.*, 927 F.2d 486 (9th Cir. 1991), *cert. denied*, 502 U.S. 859 (1991), (affirming dismissal under the court's inherent power as appropriate sanction for falsifying a deposition); *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988) (reversing dismissal where alleged misconduct peripheral to merits of case, but observing, "[d]ismissal under a court's inherent powers is justified . . . in response to abusive litigation practices . . . and to insure the orderly administration of justice and the integrity of the court's orders"); *North Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) (affirming dismissal of defendant's counterclaim under court's inherent power for concealing documents and violating court's discovery order); *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982) (noting that "[i]t is firmly established that the courts have inherent power to dismiss an action or enter a default judgment to ensure the orderly administration of justice and the integrity of their orders[,]" but reversing entry of default because the deception was "peripheral" to the merits of the controversy); *Arnold v. Cnty. of El Dorado*, No. 2:10-cv-3119, 2012 WL 3276979, at *15 (E.D. Cal. Aug. 9, 2012) (plaintiffs perjury warranted dismissal).

A district court should consider a number of factors prior to dismissal, including "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of

3

cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch*, 69 F.3d at 348 (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993)).  Additionally, in order for dismissal to be proper pursuant to the court's inherent authority, the sanctionable conduct must be due to "'willfulness, fault, or bad faith.'" *Id.* (citing *Henry*, 983 F.2d at 946) (quoting *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985)).  In *Arnold*, 2012 WL 3276979, at *4, the court concluded that "committing perjury is acting in 'bad faith,'" but warned that "perjury should not be confused with inconsistencies in a party's deposition and trial testimony."  Finally, "[d]ue process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case.'" *Anheuser-Busch*, 69 F.3d at 348 (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983); *see also Phoceene Sous-Marine*, 682 F.2d at 806 (holding default entry violated due process where the sanctioned party's deception was wholly unrelated to the merits of the controversy).  "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (referencing *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989)).

**III.    Discussion**

       **A.    Huntley's Deceptive Conduct**

Here, the evidence clearly demonstrates that Huntley deliberately provided false testimony in an effort to thwart the discovery of evidence that would undermine his claims of injury.  On August 21, 2013, Huntley provided sworn responses to Defendants' First Set of Interrogatories. Doc. #19, Ex. 1.  When asked to "itemize, in detail, each an every injury and damage claimed to have been sustained by you as a result of the incident which is the subject of your [FAC]," Huntley responded, in relevant part, as follows:

4

> I suffered right shoulder rotator cuff and labral tears as well as medially subluxed biceps tendon with accentuated acromion. I had to undergo surgery to repair the damage to my shoulder. I experienced significant pain in my shoulder. I have lost almost all strength in my right arm and shoulder. I am still experiencing occasional pain in my shoulder which is a 9/10 on a scale of 1 to 10.

Response to Interrogatory No. 1, Doc. #19, Ex. 1. In a deposition, Huntley further stated that he now suffers from numbness in his fingers and hand. Huntley Depo., Doc. #19, Ex. 3, 108:7, 108:16. He also denied ever having previously suffered any numbness in his hands. *Id.* at 116:12-21. When asked to "state in detail whether, prior to . . . the date of the incident . . . , you ever hand any injury to or difficulty with the same part of your body . . . as you claim was injured in the subject incident," Huntley responded "None." Response to Interrogatory No. 2, Doc. #19, Ex. 1. When asked to "describe in detail . . . each and every accident or incident of any kind whatsoever in which you sustained an injury of any kind prior and subsequent to the subject incident," Huntley again responded "None." Response to Interrogatory No. 3, Doc. #19, Ex. 1. Huntley further testified in a deposition as follows:

> Q: Prior to September of 2011 did you have any type of problems of any kind with your right shoulder?
>
> A: No.
>
> Q: Had you ever had any pain in it at all?
>
> A: No.

Huntley Depo., Doc. #19, Ex. 3, 20:10-14. Huntley also testified that he did not tell anyone on September 29, 2011, that he had arthritis in his shoulder.[3] *Id.* at 20:15-17.

Interrogatory No. 4 asked Huntley to identify the following:

the full name and address of each doctor, physician, physical therapist, psychologist,

---

[3] Huntley's testimony in this regard directly contradicts a statement which he signed on the day of the incident in question. Therein, Huntley stated that ". . . he said I left the truck running there for a hr. and I said he was full of shit the cop went behind me and grab me and threw me in to the truck and pulled my arm up behind me. I told him my arme had Arthis in it and it get sore and it get better." Doc. #19, Ex. 4.

5

> psychiatrist, counselor, therapist, surgeon, chiropractor or other member of the healing arts who has examined you, treated you, provided assistance with day-to-day activities, or with whom you have consulted for any reason during the past ten (10) years, or prior to that time if for any reason that consultation was related to the injuries, ailments, or other physical . . . maladies which you now claim or anticipate to claim as damages in the instant litigation . . .

After objecting that the interrogatory was overbroad and unduly burdensome, Huntley provided what he claimed to be a list of providers for the past five years. Response to Interrogatory No. 4, Doc. #19, Ex. 1. Huntley identified six providers, only one of whom Huntley saw prior to the incident in question—his treating family practitioner, Felix DeGuzman. *Id.* In a related interrogatory, requesting that Huntley identify each and every hospital, clinic, or medical facility where he sought or received medical treatment during the past ten years, Huntley again objected on the ground that the interrogatory was overbroad and unduly burdensome. Response to Interrogatory No. 9, Doc. #19, Ex. 1. Huntley directed Defendants to those health care providers identified in Response to Interrogatory No. 4. *Id.* Further, in a deposition, Huntley testified that he had not received any medical care or treatment outside of Carlin in the last 20 years.[4] Huntley Depo., Doc. #19, Ex. 3, 18:1-5.

In an effort to determine whether Huntley had suffered any previous work-related injuries, Defendants requested that Huntley provide information related to his employment during the past ten years. Huntley objected on the ground that the interrogatory was overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Response to Interrogatory No. 8, Doc. #19, Ex. 1. In a later deposition, Huntley identified one past employer as Newmont Gold. Huntley Depo., Doc. #19, Ex. 3, 15:7-10. In a second set of interrogatories, Defendants asked Huntley to identify "any and all workmen's compensation claims you have made in the last 10 years, or during your lifetime if such claim pertained to any portion of your body which you claim was injured in the events [at issue]." Huntley responded "None."

---

[4] Huntley changed his testimony, noting one hospitalization in Twin Falls, Idaho for pneumonia about 8 years prior, but no other medical treatment was identified.

1 Response to Interrogatory No. 9, Doc. #19, Ex. 2.  Later in a deposition, Huntley provided
2 testimony that directly contradicted his sworn interrogatory response.  Specifically, when asked
3 whether he had suffered any work-related injuries, whether he received treatment for those injuries,
4 and whether he received workmen's compensation benefits for the condition, Huntley admitted that
5 he suffered from and received treatment and benefits for carpal tunnel in both hands.  Huntley
6 Depo., Doc. #19, Ex. 3, 15:11-24.  In response to a request to identify "any and all providers of
7 health care insurance coverage which you have had during the last 10 years," Huntley objected, but
8 provided that he has been on Medicare since he turned 65 years of age.  Response to Interrogatory
9 No. 8, Doc. #19, Ex. 2.

Defendants also requested that Huntley produce:

> [t]he complete and entire medical reports, hospital reports, history taken, laboratory reports, x-ray reports, counseling or therapy records, and all medical bills, physician notes, orders and progress notes, nurse's notes, and the like relevant to the injury complained of and of any and all pre-existing injuries or injuries relating thereto, by providing Defendant's counsel with an executed authorization in the form attached hereto.

Request for Prod. No. 1, Doc. #19, Ex. 5.  Again, Huntley identified and produced only those medical records related to his treatment after the incident in question, as well as those from his treating family practitioner, Felix DeGuzman.  Response No. 1, Doc. #19, Ex. 5.

Thereafter, Defendants subpoenaed the medical records that Huntley refused to identify and produce during discovery.[5]  Those records clearly reveal that Huntley suffered from a pre-existing right shoulder condition and numbness in his right hand.  *See* Doc. #19, Ex. 6.  Specifically, the records show that Huntley received significant treatment from the Reno Orthopedic Clinic for pre-existing right shoulder and wrist conditions.  The records obtained from Newmont Gold show that, in addition to wrist complaints, Huntley had complained on numerous visits of bilateral shoulder

---

[5] Defendants were only able to obtain medical records from Newmont Gold.  Doc. #19, Ex. 7.  Evidently, Reno Orthopedic Clinic no longer has Huntley's medical records.  Huntley has not identified or provided any further information regarding prior treatment for any pre-existing conditions.

and wrist pain and numbness. On a visit dated September 14, 1998, Huntley complained of bilateral shoulder pain and bilateral wrist pain that had been present over the last three to four years. Doc. #19, Ex. 6, p. 542. At that time, he was diagnosed with bilateral degenerative joint disease and impingement syndrome in his shoulders as well as bilateral degenerative arthritis in his wrists. *Id.* Records dated September 16, 1998, indicate that Huntley was suffering from significant AC (acromio-clavicular) joint changes in both shoulders, AC joint arthropathy in both shoulders, subacromial impingement in both shoulders, and flexor carpi radialis tendinitis in both wrists. *Id.* at 541, 479. At that time, he was prescribed physical therapy for both shoulders and nonsteroidal anti-inflammatories. *Id.* Follow-up records from January 20, 1999, indicate that Huntley continued to suffer from numbness in his fingers and pain. *Id.* A medical evaluation dated March 17, 1999, indicates that Huntley's chief complaint was difficulty in both upper extremities and pain, numbness, and tingling in both wrists. *Id.* at 408. The evaluation notes that "[h]e has had gradual onset of pain, paresthesias, numbness and tingling. Initially the left hand bothered him more but now the right hand bothers him." *Id.* at 410. Huntley complained that "at the end of the day he is having so much pain in his hands he can no longer hold on to the levers or steering wheel. By the end of the week he is having terrible problems." *Id.* Finally, Huntley indicated that the wrist pain is worse on the right side and the numbness is worse on the left side. *Id.* The evaluation also confirms that he was diagnosed with bilateral carpal tunnel syndrome. *Id.* at 409. On April 13, 1999, physician notes indicate that he presented with a new complaint of AC symptoms in his right shoulder with positive subacromial impingement signs. *Id.* at 564, 483. He was treated with an injection for this condition and further prescribed exercises for the impingement. *Id.* These records further indicate that a disability form was filled out and sent to Newmont Gold. *Id.*

        B.        The *Anheuser-Busch* Factors

Considering the aforementioned undisputed evidence, which clearly belies Huntley's assertion that he has been truthful and cooperative in discovery, the Court finds that all of the *Anheuser-Busch* factors weigh in favor of dismissal. As to the first and second factors, Huntley's

8

misconduct has undermined the public's interest in expeditiously resolving this case and impeded the Court's ability to manage its dockets by obscuring the truth and inhibiting Defendants' ability to conduct discovery. *See Wanderer v. Johnston*, 910 F.2d 652, 565 (9th Cir. 1990) (finding that the first two factors favor the imposition of sanctions in most cases).

As to the third factor, "[the Ninth Circuit has] found the element of prejudice to be essential, stating that sanctions which interfere with the litigants' claim or defenses violate due process when they are imposed 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'" *Id.* (quoting *Wyle*, 709 F.2d at 591). Here, the gravamen of Huntley's Complaint is that Slover twisted his right arm behind his back causing a rotator cuff tear and other injuries to his right shoulder and wrist. Certainly, the existence of a previously existing right shoulder injury/condition threatens to interfere with the rightful decision of the case and the defendants' ability to present a defense on the merits because it goes to the core issues of whether Slover's actions were the cause of Huntley's injuries and Huntley's claim for money damages. In this regard, Huntley's deception was not "peripheral" to the merits of the controversy. *See Phoceene Sous-Marine*, 682 F.2d at 806 (finding that litigant's improper attempts to delay trial were "wholly unrelated to the matters in controversy"). Moreover, contrary to Huntley's assertion that his misconduct "did not prejudice the Defendants or interfere with their ability to obtain those records because they did actually obtain them via subpoena," (Doc. #22, p. 5) his false testimony, omissions, and refusals to produce relevant medical documentation have directly interfered with Defendants' ability to present a defense or otherwise expose the truth in this action. In fact, the evidence clearly demonstrates that it was Huntley's intention and purpose to do so.

Fourth, while public policy favors disposition of cases on their merits, Huntley's own litigation tactics have undermined the very judicial process that Huntley himself invoked. Certainly, the public policy favoring disposition of cases on their merits would not be served by allowing Huntley's fraudulent action to proceed.

Although the fifth factor considers "whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal . . . [,] it is not always necessary for the court to impose less serious sanctions first, or to give any explicit warning." *Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). Here, Huntley avers that sanctions are unwarranted because the Court never issued any discovery related orders with which he failed to comply. He further asserts that the "correct" procedure or remedy is to demand further responses and then seek a court order compelling further responses. Similarly, in *Anheuser-Busch*, 69 F.3d at 353, the plaintiff argued that "dismissal was too harsh a sanction because the district court did not warn her that if she concealed documents and lied about their existence to the court that her case might be dismissed. The Ninth Circuit disagreed, holding that an explicit warning is not always necessary. *Id.*; *see also Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (although a reviewing court must consider "whether [the district court] explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal . . . , it is not always necessary for the court to impose less serious sanctions first, or to give any explicit warning").

Here, Huntley is correct that the Court never issued any discovery-related orders or sanctions, or otherwise warned him that his misconduct could result in serious consequences, including dismissal. Nevertheless, the evidence strongly supports a finding that Huntley deliberately and in bad faith offered false testimony under oath.[6] Moreover, he refused to release the very medical records that would expose his perjury. Finally, when faced with an opportunity to acknowledge and explain his misconduct, Huntley offered more misrepresentations, without "any sign of repentance or any indication that his pattern of behavior would cease if the case were

---

[6] Defendants' attorney admonished and Huntley acknowledged at his deposition that perjury is a felony in Nevada and carries with it the certain penalties. At that time, Huntley took an oath to tell the truth.

10

allowed to proceed." *Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 391 (E.D. Cal. 1992). In the face of clear evidence to the contrary, Huntley continued to downplay the significance of his pre-existing condition and goes so far as to repeat that "he had never suffered a right shoulder injury before the incident." Doc. #22, p. 4. He went on to brazenly assert that he "can and should be forgiven for not remembering every ache and pain he has ever suffered over the last 15 years." Doc. #22, p. 5.

Under these circumstances, the Court finds that alternative sanctions are not warranted. Huntley cannot seriously maintain that his willful and egregious abuse of the discovery process should be sanctioned by a mere slap on the wrist and a court order directing him to go back and tell the truth when under oath. As the Ninth Circuit has explained "[t]here is no point to a lawsuit, if it merely applies law to lies. True facts must be the foundation for any just result." *Arnold*, 2012 WL 3276979, at *4 (quoting *Valley Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998)).

> Perjury is much more than simply a "gotcha," harmful in effect only for the reason that one got caught. Litigation is not a game in which perjury warrants a five yard penalty for a minor untruth, fifteen yards if the perjury was really serious. Rather, perjury on any material fact strikes at the core of the judicial function and warrants a dismissal of one's right to participate at all in the truth seeking process. If one can be punished for perjury with up to five years imprisonment, 18 U.S.C. § 1621, it should not seem out of place that a civil action might be dismissed for the same conduct.

*Id.*; *see also Brown v. Oil States Skagit Smatco*, 664 F.3d 71 (5th Cir. 2011) (dismissal with prejudice was warranted for plaintiff's perjury at his deposition); *Chavez v. City of Albuquerque*, 402 F.3d 1039 (10th Cir. 2005) (perjury in deposition and answers to interrogatories warranted dismissal, and there was no requirement to warn party deponent not to commit perjury once he swears to give truthful answers); *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003) (dismissal as sanction for repeated discovery-related perjury was proper); *Pope v. Federal Exp. Corp.*, 974 F.2d 982 (8th Cir. 1992) (dismissal for perjured testimony).

///

///

11

### IV. Conclusion

The evidence before the Court clearly demonstrates that Huntley intentionally offered incomplete and inaccurate discovery responses and proffered blatantly perjured testimony on issues that are central to his claim. He wrongfully refused to disclose prior incidents in which he suffered pain and injury to his right shoulder and he adamantly denied the fact that he suffered from virtually the same symptoms and conditions prior to the incident in question. When confronted with his own transgressions, Huntley maintained that he did nothing wrong.

As such, the Court finds that this is quintessentially a case in which a litigant's abusive litigation practices threatens the orderly administration of justice. Huntley willfully engaged in deceptive conduct that undermined the integrity of the very judicial process that he invoked to vindicate his rights. Finally, there is no indication that, if given a second chance, Huntley would do anything differently. While the Court certainly does not undertake the sanction of dismissal lightly, nothing short of dismissal with prejudice is appropriate under these circumstances. *See Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011) (explaining that "when [perjury] is discovered, the penalty needs to be severe enough to deter such conduct" and protect the judicial process against abuse, because "[t]he proper administration of justice depends on people testifying truthfully under oath").

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. #19) is GRANTED.

IT IS FURTHER ORDERED that Huntley's Complaint shall be DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 14th day of August, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE